UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JASON LEOPOLD,<br><br>    PLAINTIFF<br>vs.<br><br>NATIONAL SECURITY AGENCY,<br><br>    DEFENDANT | Civil Action No. 1:14-cv-919 (KBJ) |

## PLAINTIFF'S MOTION TO ALLOW TIME FOR DISCOVERY UNDER RULE 56(d)

Pursuant to Rule 56(d), Plaintiff Jason Leopold requests that the Court permit limited discovery. Defendant does not consent to the relief sought in this motion.

            Respectfully Submitted,

             /s/ Jeffrey Light_____

              Jeffrey L. Light
              D.C. Bar #485360
              1712 Eye St., NW
              Suite 915
              Washington, DC 20006
              (202)277-6213
              Jeffrey.Light@yahoo.com

              *Counsel for Plaintiff*

Dated: December 19, 2014

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JASON LEOPOLD,<br><br>    PLAINTIFF<br>vs.<br><br>NATIONAL SECURITY AGENCY,<br><br>    DEFENDANT | Civil Action No. 1:14-cv-919 (KBJ) |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO ALLOW TIME FOR DISCOVERY UNDER RULE 56(d) AND IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56(d), Plaintiff Jason Leopold requests that the Court deny Defendant's motion for summary judgment and permit limited discovery. Without discovery, Mr. Leopold cannot gather and present facts adequate to support his claims. As is explained in the accompanying declarations, if discovery is permitted Mr. Leopold will be able to demonstrate that the NSA failed to conduct an adequate search.

I.  Discovery in FOIA cases

Although discovery in FOIA requests is not the norm, "no type of action, within the coverage of the Federal Rules, is excepted from the operation of Rules 26 through 37 (discovery)." *Weisberg v. Webster*, 749 F.2d 864, 868 (D.C. Cir. 1984), *quoting* 4 J. Moore, MOORE'S FEDERAL PRACTICE ¶ 26.51 (2d ed. 1976) (district court properly required party in FOIA case to answer interrogatories). Discovery is typically permitted in a FOIA case "if the agency has not undertaken an adequate search for responsive

documents." *Flowers v. IRS*, 307 F. Supp. 2d 60, 68 (D.D.C. 2004). In contrast, "[w]here an agency's affidavits regarding its search are sufficient, the judge has the discretion to forgo discovery." *Id.*

In order to prevent a plaintiff from being "railroaded," a premature summary judgment motion "can be adequately dealt with under Rule 56(f) [now 56(d)], which allows a summary judgment motion to be denied, or the hearing on the motion to be continued, if the nonmoving party has not had an opportunity to make full discovery." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). This rule provides the appropriate procedural mechanism for a plaintiff to obtain discovery in a FOIA case. *Schaffer v. Kissinger*, 505 F.2d 389 (D.C. Cir. 1974) (per curiam) ("Appellant should be allowed to undertake discovery for the purpose of uncovering facts which might prove his right of access to the documents which he seeks. Rule 56(f) [now 56(d)], Fed. R. Civ. P.; *Washington v. Cameron*, 133 U.S. App. D.C. 391, 411 F.2d 705, 710-11 (1969).")

## II.   Adequacy of the search

A.  Defendant fails to adequately explain the search conducted by the FOIA office.

This case is somewhat unusual. Mr. Leopold's request sought emails from Edward Snowden raising concerns about the NSA's programs. Rather than searching for these emails directly, the agency reviewed the results of a previously conducted investigation into Mr. Snowden.

Defendant's declaration describes the investigation into Mr. Snowden in some detail, but provides little information about the agency's actions in response to Mr. Leopold's FOIA request. In its entirety, the declaration states that it took the following actions in

response to Mr. Leopold's FOIA request: "After receiving Plaintiff's FOIA request, NSA's FOIA office reviewed the aforementioned searches conducted and the results of those searches." (Sherman Decl. ¶ 17.) Believing that the previous searches were adequate, Defendant concluded that "no additional searches were required to respond to this request." (Sherman Decl. ¶ 17.) (The record or records reviewed by the FOIA office which contain the results of the previous searches will be referred to hereinafter as the "search results documents.")

For FOIA purposes, the "search" here consisted entirely of the FOIA office's review of the results of a previous investigation; the investigation itself was not a "search" under FOIA. *See* 5 USC § 552(a)(3)(D) ("'search' means to review, manually or by automated means, agency records *for the purpose of locating those records which are responsive to a request*") (emphasis added). The investigation into Mr. Snowden and the review of his emails do not constitute a "search" under FOIA because Defendant could not have had the "purpose" of locating records responsive to Plaintiff's request before Plaintiff had submitted his request.

The rare cases in which courts have found no additional search to be necessary have involved situations in which the records sought would be beyond the purview of the agency;[1] where the agency's records systems are not organized in a way that a search would be possible;[2] and where the type of record sought was not kept by the agency.[3]

---

[1] *Reyes v. United States EPA*, 991 F. Supp. 2d 20, 26-27 (D.D.C. 2014) (reasonable for EPA to decline to search for information pertaining to an "investigation" because EPA did not conduct an investigation; reasonable for agency to decline to search for raw temperature data because the EPA "did not create, possess, or control the raw temperature data"); *Roman v. NSA*, 2012 WL 569747, 2012 U.S. Dist. LEXIS 23030 (E.D.N.Y. Feb. 22, 2012) ("The NSA reasonably considered the request regarding 'functional magnetic resonance imaging' to concern medically-related applications outside the purview of the NSA's mission, which entails information assurance and signals intelligence.").

[2] *Moore v. Nat'l DNA Index Sys.*, 662 F. Supp. 2d 136, 139 (D.D.C. 2009) ("Under these circumstances – where a search for records related to Moore is, by design, literally impossible for the defendants to conduct

None of these circumstances apply here. In this case, Defendant's refusal to conduct additional searches relies on the FOIA office's review of the contents of the search results records. As to the key question of what the search results records say about the existence of responsive records, the agency's declaration is silent. Mr. Leopold therefore requests discovery with respect to the search results documents.

Plaintiff seeks permission from the Court to request the production of the search results documents, or in the alternative, to submit interrogatories asking Defendant to provide information about the content of the documents.[4] The purpose of these discovery requests is to determine whether the documents' description of the search results is presented in such a manner as to make it possible to rule out the possible existence of any records responsive to Mr. Leopold's FOIA request. If, for example, the search results documents were to state, "No emails from Mr. Snowden were found raising concerns about the *constitutionality* of NSA's programs," it would not necessarily follow that no responsive records exist. Plaintiff's FOIA request was not restricted to emails from Mr. Snowden raising concerns about "constitutionality" of NSA programs. Rather, the request sought "disclosure of any and all emails written by former NSA contractor Edward Snowden in which Mr. Snowden contacted agency officials through email to raise concerns about NSA programs." (Am. Compl. ¶ 12.) Without any information as to the

---

not searching satisfies the FOIA requirement of conducting a search that is reasonably calculated to uncover responsive documents.")

[3] *Cunningham v. FAA*, 2013 U.S. Dist. LEXIS 124100, 2013 WL 4670559 (N.D. Ga. Aug. 29, 2013) ("Regarding Requests 4 and 6, the SF-52 forms were not saved because they were generated in headquarter's [sic] Human Resources instead of the employees' Regional Office.. Thus, any search would have been futile") (internal quotation marks and citations omitted).

[4] Defendant also seeks the search results records through his second FOIA request. (Am. Compl. ¶ 16) (describing Plaintiff's FOIA request as seeking, *inter alia*, "any and all records about the NSA's 'search,' be it manual or electronic, for emails written/sent by Edward Snowden, any and all records that refer to the search for emails written/sent by Edward Snowden, in particular, a search for emails in which Mr. Snowden reported [sic] raised questions/concerns about certain NSA programs and operations and/or raised questions/concerns about the legality and/or illegality of certain NSA programs and operations").

contents of the search results documents, it is impossible for either Plaintiff or the Court to determine whether the investigation into Mr. Snowden yielded documents responsive to Mr. Leopold's FOIA request.

B.  Defendant erroneously interpreted the scope of Mr. Leopold's FOIA request

Plaintiff requests further discovery as to Defendant's interpretation of the scope of his FOIA request. Specifically, Plaintiff seeks to submit an interrogatory asking how the agency understood the phrase in his request, "raise concerns about NSA programs." It appears that the parties disagree as to the meaning of this phrase, and before the court can assess the adequacy of the search, it "must first ascertain the scope of the request itself." *Nation Magazine v. United States Customs Serv.*, 71 F.3d 885, 889 (D.C. Cir. 1995).

Defendant contends that the publicly released email from Mr. Snowden "does not 'raise concerns about Agency programs,'" and therefore it is not responsive to Mr. Leopold's FOIA request. (Sherman Decl. ¶ 18.) Mr. Leopold disagrees with Defendant's characterization of the email. Understood in context, the email does indeed raise concerns about NSA's programs.

In the email that is referred to in the Sherman declaration, Mr. Snowden asks the NSA's Office of General Counsel about training material on the hierarchy of laws that NSA must follow. The training material does appear to suggest, as Mr. Snowden points out, that a statute and an Executive Order are of equal precedence. When the NSA publicly released this email, Mr. Snowden responded in an interview with *The Washington Post*, explaining:

> Today's release is incomplete, and does not include my correspondence with the Signals Intelligence Directorate's

>Office of Compliance, which believed that a classified executive order could take precedence over an act of Congress, contradicting what was just published. It also did not include concerns about how indefensible collection activities - such as breaking into the back-haul communications of major US internet companies - are sometimes concealed under E.O. 12333 to avoid Congressional reporting requirements and regulations.[5]

The publicly released email from Mr. Snowden thus goes to the heart of the concern that NSA was illegally justifying the bulk collection of Americans' data under E.O. 12333 by wrongly assuming that Executive Orders were not subordinate to laws passed by Congress. Defendant's failure to recognize the significance of this email thus reflects too narrow an interpretation of Mr. Leopold's request, contradicting the well-established rule that an agency has a duty to construe a request liberally. *Truitt v. United States Dep't of State*, 897 F.2d 540, 544-45 (D.C. Cir. 1990).

Mr. Leopold's view that the publicly released email raises concerns about NSA programs is not unreasonable. The same day the email was released, Reuters ran an article with the headline, "Snowden raised concerns in 2013 email, but no evidence he blew whistle: NSA." *Available at* http://www.reuters.com/article/2014/05/29/us-usa-snowden-email-idUSKBN0E92DK20140529 (last visited December 19, 2014.) Prominent blogger Marcy Wheeler wrote, "[T]he subject of Edward Snowden's emailed question to NSA's Office of General Counsel pertained to one of the under-reported themes of his leaks, the way NSA uses EO 12333 to collect data on Americans that either

---

[5] "Edward Snowden responds to the release of email by U.S. Officials," *The Washington Post* (May 29, 2014), *available at* http://www.washingtonpost.com/world/national-security/edward-snowden-responds-to-release-of-e-mail-by-us-officials/2014/05/29/95137e1c-e781-11e3-afc6-a1dd9407abcf_story.html (last accessed December 19, 2014.)

clearly was or might have been covered by stricter laws passed by Congress." *See* https://www.emptywheel.net/2014/05/30/snowden-a-classified-executive-order/ (last accessed Dec. 19, 2014). While Defendant maintains that the email did not raise concerns about NSA programs, it must have believed that there could be some disagreement on this point, or else it would not have specifically selected for release this particular email from amongst all of the emails sent by Mr. Snowden.

C. The reasonableness of the prior search for emails cannot be determined without discovery

The Sherman declaration describes what is essentially a digital forensic examination conducted by the NSA as part of its investigation into Mr. Snowden. Without guidance from an expert as to whether the methods employed by Defendant to search for emails were reasonable, however, this Court is not in a position to make such a decision. Courts have, for example, increasingly relied on experts in electronic discovery to ensure that adequate searches for emails have been conducted. See e.g., *Rowe Entm't v. William Morris Agency Inc.*, 2012 U.S. Dist. LEXIS 161313, at *12 (S.D.N.Y. Nov. 8, 2012) ("In accordance with Magistrate Judge Francis' discovery protocol, Plaintiffs retained Electronic Evidence Discovery ('EED'), a Seattle, Washington-based electronic discovery expert, to create and search mirror images of Defendants' computer hard drives for e-mails to support the Plaintiffs' claims and to provide those e-mails to Plaintiffs' attorneys.")

The attached expert affidavit from Scott Bradner outlines the numerous ways in which the agency's declaration is deficient in describing the search for emails. Vital

information is missing from the agency's declaration, including email retention policies, the backup process for the email server, whether Mr. Snowden used a non-NSA email account, and the number of NSA-issued email accounts for Mr. Snowden. (Bradner Decl. ¶¶ 11-15.) Further, Mr. Bradner describes the problems with the method employed by the NSA of asking users to search their own email boxes rather than conducting a search of the email server(s) and/or searching email logs. (Bradner Decl. ¶ 20.)

Plaintiff requests that he be permitted to depose a designated NSA official in order to obtain the information needed by his expert to fully evaluate the reasonableness of the search. Alternatively, Plaintiff requests that he be permitted to submit interrogatories in order to obtain similar information.

Respectfully Submitted,

  /s/ Jeffrey Light

Jeffrey L. Light
D.C. Bar #485360
1712 Eye St., NW
Suite 915
Washington, DC 20006
(202)277-6213
Jeffrey.Light@yahoo.com

*Counsel for Plaintiff*

Dated: December 19, 2014